# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL CHRISTIAN LOPEZ-ARROYO, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Case No. 1:18-cv-00672-BAM (PC) <br><br> ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE <br><br> FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION TO TRANSFER VENUE AND DISMISS ACTION FOR FAILURE TO STATE A CLAIM <br><br> (ECF No. 9) <br><br> **FOURTEEN (14) DAY DEADLINE** |

**I.      Background**

Plaintiff Raul Christian Lopez-Arroyo ("Plaintiff") is a federal prisoner proceeding *pro se* in this civil rights action pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).[1] This action was initiated on March 19, 2018 in the United States District Court for the District of Arizona, (ECF No. 1), and was transferred to this district on May 15, 2018, (ECF No. 4).

On May 16, 2018, the Court issued an order requiring Plaintiff to consent to or decline United States Magistrate Judge jurisdiction within thirty days. (ECF No. 6.) On May 17, 2018,

---

[1] Plaintiff contends that this action was improperly filed as a Bivens action, and should be filed only under the All Writs Act, 28 U.S.C. § 1651. The Court will address this argument in detail below.

1

the Court issued an order for Plaintiff to submit an application to proceed *in forma pauperis* or pay the filing fee for this action within forty-five days. (ECF No. 7.) On June 25, 2018, the Court issued a second order requiring Plaintiff to consent to or decline Magistrate Judge jurisdiction within thirty days. (ECF No. 8.) All applicable deadlines have expired.

Plaintiff's complaint, filed on March 19, 2018, is currently before the Court for screening. (ECF No. 1.) The Court will also consider Plaintiff's filing of July 2, 2018, titled "Combined Notices of Court Error, Clerk Error, and Motion to Return this Matter Back to the Federal District of Arizona as Improperly Transferred Due to Court Errors." (ECF No. 9.)

## II.    Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b); 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

A. **Plaintiff's Allegations**

Plaintiff is currently housed at United States Penitentiary Atwater ("USP Atwater"), located in Atwater, California, where the events in the complaint are alleged to have occurred. Plaintiff names as defendants: the U.S. Post Master General for Merced County, California; Regional Director, U.S. Bureau of Prisons at Stockton, California; United States Bureau of Prisons Warden Andre Matevousian at USP Atwater, California; Mail Room Officer Mr. Fischer;[2] and Medical Officer Silva.

Plaintiff alleges that on or about January 15, 2018, Plaintiff mailed a pleading to the federal court. The federal court returned the stapled, stamped-filed 28 U.S.C. §§ 1651 All Writs Act Petition with attachments to Plaintiff, which arrived at USP Atwater on or about January 28, 2018.

On or about January 31, 2018, Plaintiff was summoned to the legal mail line in the prison cafeteria hall during the noonday meal. Plaintiff arrived with his Spanish Language Interpreter, Sergio Haro. Plaintiff signed the mail-room officer's log book at the direction of Defendant Fischer. After Defendant Fischer opened Plaintiff's legal mail in the presence of Plaintiff and Mr. Haro, Defendant Fischer refused to give the legal mail to Plaintiff until he removed the staple affixed to the left hand corner of the pleadings.

Plaintiff objected on the grounds that the staple had been placed there by the prison's law clerk prior to delivery to the federal court, and was the same staple when the legal papers were returned to Plaintiff stamped/filed by the Court Clerk. Plaintiff contended that Defendant Fischer had no legal grounds to remove the staple under a potential breach of security claim, because Plaintiff could get a hundred of the same staples from the prison library any time he needed to staple legal papers. Plaintiff contended that the staple was affixed to keep the numerous legal pleadings together and in order. Plaintiff demanded the return of his legal papers in the same condition they were in when returned from the federal court, and Defendant Fischer refused.

---

[2] Although Plaintiff lists "Mail Room Officer Mr. Fletcher" as a Respondent or Defendant in this matter, all allegations in the complaint relate to Mail Room Officer Mr. Fischer. There are no allegations pertaining to a Mr. Fletcher. The Court will assume that Plaintiff intended to list Mr. Fischer as a defendant.

3

1 | Defendant Fischer argued that the policy regarding staples was enforced because "cocaine
2 | and other drugs or contraband" could be in the legal mail from the federal courts. When Plaintiff
3 | asked: "The federal courts send drugs and contraband through the U.S. Mail to federal prisoners?
4 | But what does that have to do with you tearing my legal pleadings apart to remove a staple?"
5 | Defendant Fischer shrugged. Defendant Fischer denied Plaintiff's requests to take or read the
6 | additional legal papers in the envelope that were not stapled or attached to the papers that were
7 | still stapled together.

At that time, Defendant Silva, who was standing at her own temporary medical station nearby, intervened with a staple puller and stated: "You are not getting your legal mail and your papers until we pull out that staple from your legal pleadings…"

Plaintiff informed Defendant Fischer that he believed Defendants Fischer and Silva were harassing him for "boiler-plate reasons not allowed by law" and Plaintiff then refused to accept his mail in the damaged condition they were about to be placed in. Plaintiff further demanded that his name be crossed out of Defendant Fischer's log book on the grounds that his legal mail had not been delivered in accordance with law, and that Defendant Fischer return the legal pleadings to the U.S. Court as undeliverable for the reasons now being complained of.

Plaintiff further alleges violations of the law on unspecified dates and times, related to the charging of postage fees and fees for notary public services. However, it appears that Plaintiff seeks relief related only to the incident of January 31, 2018 regarding the legal mail sent to Plaintiff from the federal court.

Plaintiff seeks relief in the form of an order to show cause why Defendants should not be sanctioned in the amount of $1,000 in fines directed to Plaintiff and Mr. Haro.

**B.     Motion to Transfer Venue**

Plaintiff first argues that this matter was improperly transferred from the United States District Court for the District of Arizona, and requests that the action be returned to the court where Plaintiff originally intended to file. The Court construes this requests as a motion to transfer venue.

///

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "A civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(b). The party seeking the transfer must meet an initial threshold burden by demonstrating that the action could have been brought in the proposed transferee district. 28 U.S.C. § 1391(b); 28 U.S.C. § 1404(a); Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985); Park v. Dole Fresh Vegetables, Inc., 964 F.Supp.2d 1088, 1093 (N.D. Cal. 2013).

As noted above, the events at issue in this action occurred at USP Atwater in Merced County, which is located within the boundaries of the Fresno Division of the Eastern District of California. There is no indication that any of the defendants "reside" in, or that any of the events giving rise to this suit have taken place in, the District of Arizona. Accordingly, venue is appropriate in this district.

**C.     All Writs Act**

Plaintiff next contends that he intended for this action to be filed pursuant to the All Writs Act, 28 U.S.C. § 1651, and it was incorrectly filed pursuant to Bivens. Plaintiff further argues that no filing fees are due for actions filed pursuant to 28 U.S.C. § 1651.

The All Writs Act provides that:

> (a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.
>
> (b) An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction.

28 U.S.C. § 1651. The All Writs Act does not confer original jurisdiction on federal courts. Id.; Syngenta Crop Protection, Inc. v. Henson, 537 U.s. 28, 29 (2002). Instead, the All Writs Act

///

> is a residual source of authority to issue writs that are not otherwise covered by a statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling.

Pennsylvania Bureau of Corrs. v. U.S. Marshals Serv., 474 U.S. 34, 43 (1985); In re Estate of Ferdinand Marcos Human Rights Litigation, 94 F.3d 539, 546 n.9 (9th Cir. 1996). Thus, even if jurisdiction is properly pled, to the extent that Plaintiff seeks an injunction or a writ of mandamus under the All Writs Act, such relief should be granted "only in the most critical and exigent circumstances [ ] when" the legal rights at issue are indisputably clear." Brown v. Gilmore, 533 U.S. 1301, 1302 (2001) (quoting Ohio Citizens for Responsible Energy, Inc. v. NRC, 479 U.S. 1312, 1313 (1986) (quotations and citations omitted)).

In the instant case, Plaintiff has not alleged a jurisdictional basis for his request for relief, as required under Federal Rule of Civil Procedure 8(a), nor has he made a showing that he is entitled to relief under the All Writs Act. Rather, Plaintiff specifically states that he does not wish for this action to be filed pursuant to Bivens. (ECF No. 9.) As such, Plaintiff's complaint is devoid of any statement setting forth a jurisdictional basis for this action, and fails to state a claim upon which relief may be granted.

### D. **Bivens Actions Following Ziglar v. Abbasi**

Even assuming Plaintiff filed this action pursuant to Bivens, the Supreme Court has recently made clear that "expanding the Bivens remedy is now a disfavored judicial activity," and has "consistently refused to extend Bivens to any new context or new category of defendants. Ziglar v. Abbasi, 137 S.Ct. 1843, 1857 (2017) (citations omitted). Ziglar sets forth a two-part test to determine whether a Bivens claim may proceed. A district court must first consider whether the claim presents a new context from previously established Bivens remedies. If so, it must then apply a "special factors" analysis to determine whether "special factors counsel hesitation" in expanding Bivens absent affirmative action by Congress. Id. at 1857, 1875.

"If [a] case is different in a meaningful way from previous Bivens cases decided by [the Supreme Court], the context is new." Id. at 1859. Ziglar provides several examples of differences meaningful enough to make a given context a new one, including "the constitutional

6

right at issue." Id. at 1860. To date, the Supreme Court has only recognized a Bivens remedy in the context of the Fourth, Fifth, and Eighth Amendments. See Bivens, 403 U.S. 388 (Fourth Amendment prohibition against unreasonable searches and seizures); Davis v. Passman, 442 U.S. 228 (1979) (Fifth Amendment gender-discrimination); Carlson v. Green, 446 U.S. 14 (1980) (Eighth Amendment Cruel and Unusual Punishments Clause).

If the claim presents a new context in Bivens, the court must consider whether there are special factors counseling against extension of Bivens into this area. "[T]he inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Ziglar, 137 S.Ct. at 1857–58. This requires the court to assess the impact on governmental operations system-wide, including the burdens on government employees who are sued personally, as well as the projected costs and consequences to the government itself. Id. at 1858. In addition, "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new Bivens cause of action." Id.

Here, Plaintiff seeks to extend a Bivens remedy for restrictions placed on Plaintiff's legal mail arriving from a federal court, specifically the requirement that staples be removed before the legal mail would be given to Plaintiff. Liberally construed, it appears Plaintiff is attempting to state a claim for violation of his First Amendment right to access the courts.

As noted above, the Supreme Court has only recognized a Bivens remedy in the context of the Fourth, Fifth, and Eighth Amendments. Ziglar, 137 S.Ct. at 1860 (Supreme Court has approved three Bivens claims in the past: "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma.") (internal citations omitted).

The Supreme Court has never implied a Bivens action under any clause of the First Amendment.[3] See Reichie v. Howards, 566 U.S. 658 n.4 (2012) ("We have never held that

---

[3] While the Ninth Circuit previously has authorized Bivens claims based on the First Amendment, see Gibson v. United States, 781 F.2d 1334 (9th Cir. 1986), Ziglar states that the proper test

7

Bivens extends to First Amendment claims."). As Plaintiff's First Amendment claim clearly presents a new context in Bivens, this requires the consideration of any special factors counseling against extension of Bivens into this area, including whether there is any alternative, existing process for protecting Plaintiff's interests.

As discussed in Ziglar, "the existence of alternative remedies usually precludes a court from authorizing a Bivens action." Ziglar, 137 S.Ct. at 1865. It is clear that Plaintiff has alternative remedies available to him, including the Bureau of Prisons administrative grievance process, the filing of a writ of habeas corpus, and injunctive relief.

Moreover, "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." Id. As noted by the Supreme Court:

> Some 15 years after Carlson was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. This Court has said in dicta that the Act's exhaustion provisions would apply to Bivens suits. But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the Carlson damages remedy to cases involving other types of prisoner mistreatment.

Id. (internal citations omitted). Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new Bivens claim.

For the foregoing reasons, the Court finds that special factors counsel hesitation in this context, and declines to find an implied Bivens cause of action for First Amendment access to courts. This deficiency is not subject to cure, and no leave to amend should be granted.

**III. Failure to Obey Court Orders**

Finally, despite multiple orders from the Court, Plaintiff has failed to file an application to proceed *in forma pauperis*, pay the filing fee, or consent to or decline Magistrate Judge jurisdiction. Even if Plaintiff's complaint were found to state a cognizable claim, this action could proceed no further without Plaintiff's cooperation and compliance with the Court's orders.

---

involves a consideration of Bivens cases decided by the Supreme Court, not by the Courts of Appeals. Ziglar, 137 S.Ct. at 1859. Ninth Circuit decisions are therefore not controlling.

Indeed, a civil action may not proceed absent the submission of either the filing fee or an application to proceed *in forma pauperis*. 28 U.S.C. §§ 1914, 1915.

Plaintiff was warned that his failure to submit an application to proceed *in forma pauperis* or pay the filing fee would result in dismissal of this action, (ECF No. 7), and combined with the lack of jurisdictional basis for this action, no alternative sanction would be satisfactory. See In re Phenylpropanolamine (PPA) Prods. Liab. Litig., 460 F.3d 1217, 1229 (9th Cir. 2006)

**IV.     Conclusion and Recommendation**

Accordingly, the Clerk of the Court is HEREBY DIRECTED to randomly assign a district judge to this action.

Further, it is HEREBY RECOMMENDED that:

1. Plaintiff's motion to transfer venue, (ECF No. 9), be DENIED; and
2. This action be dismissed, with prejudice, for Plaintiff's failure to state a claim upon which relief may be granted.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **August 7, 2018**                       /s/ *Barbara A. McAuliffe*
                                                                 UNITED STATES MAGISTRATE JUDGE